EXECUTION COPY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____
                                        )
UNITED STATES OF AMERICA and            )
THE COMMONWEALTH OF                      )
PENNSYLVANIA, DEPARTMENT                 )
OF ENVIRONMENTAL PROTECTION,            )
                                        )
                                        )
        Plaintiffs,                      )
                                        )
        v.                               )        Civil Action No.  4:21-cv-00538
                                        )
CHESAPEAKE APPALACHIA, LLC,             )
                                        )
        Defendant.                       )
_____)

## CONSENT DECREE

WHEREAS, Plaintiffs the United States of America ("United States"), on behalf of the

United States Environmental Protection Agency ("EPA"), and the Commonwealth of

Pennsylvania, Department of Environmental Protection ("PADEP") (collectively, "Agencies" or

"Plaintiffs"), filed the Complaint in this matter against Defendant Chesapeake Appalachia, LLC

("CALLC" or "Defendant"), alleging that Defendant violated Sections 301(a) and 404 of the

Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) & 1344, and violated The Clean Streams Law

("CSL"), Act of June 22, 1937, as amended, 35 P.S. §§ 691.1-691.1001; the Dam Safety and

Encroachments Act ("DSEA"), Act of November 26, 1978, P.L. 1375, as amended, 32 P.S. §§

693.1-693.28; the 2012 Oil and Gas Act ("O&G"), Act of February 14, 2012 P.L. 87 No.13, 58 Pa

C.S. §§ 3201-3274; Section 1917-A of the Administrative Code of 1929, Act of April 9, 1929,

1

EXECUTION COPY

P.L. 177, as amended, 71 P.S. § 510-17; and the rules and regulations promulgated thereunder (hereinafter collectively "Pennsylvania Law");

WHEREAS, the Complaint alleges that Defendant violated CWA Sections 301(a) and 404, and Pennsylvania Law, by discharging pollutants, including dredged or fill material, and/or controlling and directing the discharge of pollutants, including dredged or fill material, into waters of the United States and/or waters of the Commonwealth, and by conducting earth disturbance activities, stormwater management and constructing, operating, or maintaining encroachments and /or water obstructions, without prior authorization under State and/or federal law, at various locations throughout the Commonwealth of Pennsylvania counties of Beaver, Bradford, Sullivan, Susquehanna, and Wyoming ("Appendix A Impact Polygons"), also defined below, as identified in Appendix A;

WHEREAS, CALLC represents that, beginning in 2013, during the process of renewing Pennsylvania Erosion and Sediment Control General Permit authorizations and Pennsylvania gas well permits for some of CALLC's facilities, CALLC discovered instances at some of its operations in Pennsylvania where it appeared that not all wetlands or other aquatic resources that may have been subject to the requirements of the CWA or Pennsylvania Law had been delineated prior to construction.  As a result, CALLC concluded it had submitted applications for permits, including but not limited to, authorizations to discharge dredged and/or fill material to waters of the United States, pursuant to CWA Section 404, 33 U.S.C. § 1344, as well as applications for earth disturbance activities, water obstructions and encroachments pursuant to Pennsylvania Law,

2

that did not seek necessary authorization for all activities regulated under the CWA and

Pennsylvania Law;

WHEREAS, CALLC further represents that it retained Qualified Wetlands Professionals

to develop and implement an approach to voluntarily and systematically audit all CALLC-owned

pad sites and impoundments constructed by CALLC in Pennsylvania prior to January 1, 2015;

WHEREAS, between February 7, 2014, and April 30, 2014, CALLC communicated to the

Agencies regarding the field review of 50 prioritized sites by CALLC's consultant, including the

disclosure of 22 sites with unpermitted impacts;

WHEREAS, on October 22, 2018, CALLC submitted a letter to the Agencies further

disclosing Sites with unpermitted impacts and describing the audit methodology developed and

implemented by its Qualified Wetlands Professionals, and the Agencies have incorporated

CALLC's letter into their respective records in reaching this Consent Decree;

WHEREAS, on June 1, 2, and 3, 2015, November 12, 2015, and May 12 and 13, 2016,

representatives of the Agencies visited several Sites to review how CALLC and its consultants

were conducting the review, and the Agencies observed and provided feedback, but did not

approve or otherwise concur in CALLC's delineation process or results, but acknowledge that

CALLC came forward voluntarily;

WHEREAS, on May 15, 2019, CALLC and representatives of the Agencies held a

meeting to discuss CALLC's selected delineations and the characterization of its results; on

September 5, 2019, CALLC provided to the Agencies a table disclosing the unpermitted impacts

identified by its audit to the Agencies, including the quantity and type of wetland impacts and

DocuSign Envelope ID: 6E37E562-B585-4C4A-906A-4580D80F49E3

EXECUTION COPY

watercourse impacts; and in November 2019, the Agencies conducted independent assessments of the delineated features at approximately 13 of the locations identified as impacted by CALLC's audit;

WHEREAS, as a result of the Agencies' independent assessments of the delineated features, CALLC amended its disclosure to reflect the Agencies' wetland delineations at 8 of the locations identified as impacted by CALLC's audit;

WHEREAS, CALLC has identified the Appendix A Impact Polygons as unauthorized impacts to wetlands and other waters of the United States and/or the Commonwealth using an approach considering the permitting files, historical information, Geographic Information System data, and field observations, and has agreed to resolve those impacts;

WHEREAS, CALLC represents that the wetland classifications and stream classifications (collectively, "Designations") listed in Appendix A of the Consent Decree reflect its independent consultants' conclusions based on implementation of the audit methodology at the Sites. CALLC has made the data underlying these Designations available to the Agencies, and CALLC intends to use these Designations and underlying data in seeking permits pursuant to Paragraph 25 of this Consent Decree and in calculating the mitigation ratios required by Appendix B of this Consent Decree;

WHEREAS, the Agencies have reviewed the Designations and the underlying data (including delineation sheets submitted by CALLC for each Site and aerial photographs of each Site) as part of entry into this Consent Decree. This Consent Decree does not bind the Agencies to issue any permits to CALLC. However, the Agencies intend to accept the Designations and

37843329.2

EXECUTION COPY

underlying data for purposes of (1) reviewing CALLC's permit applications submitted pursuant to Paragraph 25 of the Consent Decree, and (2) determining what mitigation ratios are required, unless different information is developed during the permitting process to warrant a different Designation;

WHEREAS, CALLC has characterized certain impacts as "Transient," "Habitat Alteration," or "Fill or Dredge." For purposes of this Consent Decree:

- "Fill or Dredge Impacts" mean those areas affected by an impact to a wetland resulting from the dredging or placement of fill or the construction of a water obstruction or encroachment, which remains in place for the duration of the project. Examples of such impacts include the placement of fill or rock within a resource, or the placement of a culvert within a resource;

- "Habitat Alteration Impacts" mean impacts that include converting one type of wetland habitat to another type. Areas delineated as Habitat Alteration Impacts did not involve the discharge of dredged or fill material. An example of a Habitat Alteration Impact would include clearing a forested wetland and converting it to an emergent wetland; and

- "Transient Impacts" means those areas affected by an impact to a wetland based on evidence of earth disturbance that occurred during construction within the resource; however, the resource was either actively restored post-construction or has recovered on its own. This does not include impacted areas that are maintained as part of the continued operation and maintenance of the project. An

5

example of a transient impact would include the impact from a piece of

construction equipment tracking through a wetland and disturbing the vegetative

community, soil profile, or hydrologic regime.

The Agencies agree to consider CALLC's characterization of such impacts in connection with

implementation of Appendix B of this Consent Decree;

WHEREAS, on September 24 and September 30, 2020, CALLC and representatives of the

Plaintiffs held virtual meetings to finalize return to compliance permitting options, and CALLC is

required to seek, consistent with federal and state law, (i) permits to restore the A-1 Impact

Polygons in Appendix A in accordance with Appendix B, and (ii) after-the-fact permits for the A-

2 Impact Polygons in Appendix A in accordance with Appendix B;

WHEREAS, based upon the requirement for CALLC to seek permits, as expressed in

Paragraph 25 of this Consent Decree, and in light of the mitigation ratios used to offset impacts to

aquatic resources set forth in Appendix B and the Designations listed in Appendix A, CALLC

estimates its mitigation obligation will be the equivalent of the establishment or re-establishment

of 55 wetland acres, and 4,410 linear feet of stream restoration or enhancement; and

WHEREAS, the Parties agree that the actual mitigation obligation will be determined

through the return to compliance process in Appendix B on a Site-by-Site basis, and the Agencies

are not bound by CALLC's estimate of its mitigation obligation; and

WHEREAS, the Agencies encourage individuals and companies voluntarily to come into

compliance through self-assessment, complete disclosure, and correction of violations;

WHEREAS, the Agencies recognize a need to provide incentives for self-assessment,

DocuSign Envelope ID: 6E37E562-B585-4C4A-906A-4580D8A5A9E3

EXECUTION COPY

disclosure and correction through consideration of such voluntary actions and to avoid perceived

disincentives in connection with administrative, civil and/or criminal sanctions where appropriate;

WHEREAS, while EPA has determined that the process followed by CALLC does not

qualify for penalty relief under EPA's policy *Incentives for Self-Policing:  Discovery, Disclosure,*

*Correction and Prevention of Violations,* EPA has considered CALLC's disclosure and

agreement to return to compliance in its determination of the appropriate civil penalties for the

statutory and regulatory violations alleged in the Complaint;

WHEREAS, while PADEP has determined that the process followed by CALLC does not

fully qualify for penalty or enforcement relief under PADEP's *Policy to Encourage Voluntary*

*Compliance by Means of Environmental Compliance Audits and Implementation of Compliance*

*Management Systems*, PADEP has considered CALLC's disclosure and agreement to return to

compliance in its determination of the appropriate civil penalties for the statutory and regulatory

violations alleged in the Complaint;

WHEREAS, the Complaint seeks: (1) to enjoin the discharge of pollutants into waters of

the United States in violation of CWA Section 301(a) and 404, 33 U.S.C. §§ 1311(a) & 1344, (2)

to enjoin the pollution or potential pollution to waters of the Commonwealth caused by the

creation of unauthorized encroachments, water obstructions, earth disturbance, and stormwater

management activities in violation of Sections 401, 402, and 611 of the CSL, 35 P.S.§§ 691.401,

691.402 and 691.611, Sections 6, 13 and 18 of the DSEA, 32 P.S.§§ 693.6, 693.13 and 693.18,

Section 3259(2)(i) and Section 3259(ii) of the O&G Act, 58 Pa. C.S. §§ 3259(i) and (ii) and the

rules and regulations thereunder at or from the Appendix A Impact Polygons; (3) to require

DocuSign Envelope ID: 6E37E562-B585-4C4A-906A-4580D8AF5A9E3

EXECUTION COPY

Defendant, at its own expense, to return the Appendix A Impact Polygons to compliance with the CWA and Pennsylvania Law; and (4) to require Defendant to pay civil penalties only for the statutory and regulatory violations that are defined in the Complaint regarding the Appendix A Impact Polygons, as provided in 33 U.S.C. § 1319(d) and Section 605 of the CSL 35 P.S.§ 691.605, Section 21 DSEA 32 P.S.§ 693.21, Section 3256 of the O&G Act 58 Pa. C.S. § 3256;

WHEREAS, as a general matter, the term "Mitigation" for purposes of this Consent Decree refers to the restoration (re-establishment or rehabilitation), establishment (creation), enhancement, and/or in certain circumstances preservation of aquatic resources for the purposes of offsetting unavoidable adverse impacts which remain after all appropriate and practicable avoidance and minimization has been achieved. Any Mitigation performed pursuant to this Consent Decree and its Appendix B is for the purpose of returning the unauthorized discharges alleged in the Complaint to compliance with the applicable permitting provisions of the Clean Water Act and Pennsylvania Law;

WHEREAS, Defendant neither admits nor denies any liability for the causes of action set forth in the Complaint;

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of civil and administrative causes of action set forth in the Complaint by the United States under the CWA and by PADEP under Pennsylvania Law regarding the Sites as identified in Appendix A;

WHEREAS, the Plaintiffs and Defendant agree that settlement of this case is in the public interest, that settlement of this matter will avoid the costs and uncertainties of litigation, and that

37843329.2

DocuSign Envelope ID: 6E37E562-B585-4C4A-906A-4580D8AF5A9E3

EXECUTION COPY

entry of this Consent Decree is the most appropriate means of resolving the civil causes of action against Defendant that are the subject of this Consent Decree in this case only for the Sites identified in Appendix A;

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the causes of action against Defendant in this case, and that this Consent Decree adequately protects the public interest in accordance with the CWA, Pennsylvania Law and all other applicable federal and state laws;

WHEREAS, on June 28, 2020, CALLC and 40 affiliated companies filed petitions in the United States Bankruptcy Court for the Southern District of Texas seeking relief under Chapter 11 of the United States Bankruptcy Code at Case No. 20-33233.  The Parties disagreed as to the dischargeability of liabilities associated with the allegations set forth in the Complaint.  CALLC continues to operate its business and manage its property as a Debtor-in-Possession under Sections 1107(a) and 1108 of the Bankruptcy Code.  11 U.S.C. §§ 1107(a), 1108;

WHEREAS, CALLC agrees to take all reasonable steps to expeditiously obtain the Bankruptcy Court's approval of this Agreement prior to entry of this Consent Decree in the U.S. District Court for the Middle District of Pennsylvania, including (i) advocating for the support of this Consent Decree to the secured lenders, unsecured creditors committee, and other relevant interested parties; and (ii) filing with the Bankruptcy Court, each in form and substance reasonably acceptable to Plaintiffs, a motion (the "Bankruptcy Court Motion") and a proposed order (the "Bankruptcy Court Order") granting the Bankruptcy Court Motion to approve CALLC's execution of this Agreement in its entirety, and including a provision confirming that

37843329.2

any claims against CALLC for payment of the Civil Penalty set forth in Section V of the Consent Decree shall be afforded partial administrative expense priority in the amount set forth in Section V of the Consent Decree pursuant to 11 U.S.C. § 503(b)(1)(A).  If requested by CALLC, Plaintiffs agree to cooperate to the extent consistent with applicable law with respect to CALLC's efforts to obtain the Bankruptcy Court's grant of the Bankruptcy Court Motion;

WHEREAS, to the extent consistent with the Bankruptcy Court Order, CALLC agrees to include language in its plan of reorganization and confirmation order stating that its corporate successors or assigns, including the reorganized Defendant, shall assume all of CALLC's obligations under this Consent Decree;

WHEREAS, the Parties intend that, if the Bankruptcy Court declines to enter the Bankruptcy Court Order (or an order substantially in the form thereof that is no less favorable to CALLC than the Bankruptcy Court Order), this Agreement shall be void *ab initio*, and the Parties shall revert to their positions prior to execution of this Agreement;

THEREFORE, before the taking of any testimony upon the pleadings, without further adjudication of any issue of fact or law, and upon consent of the Parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over the causes of action set forth in the Complaint and, for purposes of this Consent Decree, personal jurisdiction over the Defendant for the causes of action set forth in the Complaint  pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1367, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

EXECUTION COPY

2.      Venue is proper in the Middle District of Pennsylvania pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because Defendant conducts business in this District, most of the subject properties are located in this District, and most of the causes of action alleged in the Complaint arose in this District.

3.      For the purposes of this Consent Decree, Defendant agrees that the Complaint states causes of action upon which relief can be granted pursuant to Sections 301, 309, 401, 402 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319, 1341, 1342 and 1344, and Pennsylvania Law.

## II.      DEFINITIONS

Whenever the terms set forth below are used in this Consent Decree, the definitions in the following subparagraphs shall apply.

"Appendix A Impact Polygons" refer only to those unauthorized impacts identified by CALLC and in Appendix A attached to the Complaint and Appendix A to this Consent Decree. "Appendix A," as used in the Consent Decree and in Appendix B includes a disclosure table and 76 figures ("Appendix A Disclosure Table" and "Appendix A Figures"). The Appendix A Disclosure Table is the list of impact polygons that will be addressed through aquatic resource restoration or through the "after-the-fact" permit process in accordance with Appendix B. The Appendix A Figures are maps on which Disclosure Table impact polygons are depicted and the area of the release of liability is indicated by the green "Limit of Disturbance" line.

"Days" shall be counted as calendar days.

"Fair Market Value" means the difference between the relevant property value (a) before the restriction to be imposed pursuant to this Consent Decree is placed and (b) as if the restriction

11

EXECUTION COPY

to be imposed pursuant this Consent Decree is in place as of a current date.  Absent an objection

from EPA (in consultation with PADEP) as set forth below, such difference in value shall be

determined by an appraisal that complies with the Uniform Appraisal Standards for Federal Land

Acquisition (UASFLA or Yellow Book) and is performed by an appraiser who (a) is a

Commonwealth of Pennsylvania Certified General Real Property Appraiser, (b) is in good

standing with the licensing authority where the credential was issued, (c) has demonstrated

competency in compliance with UASFLA in conducting appraisals of properties with and without

the restriction of the type to be imposed pursuant to this Consent Decree, (d) can provide

documentation of appraisal education courses attended, including course completion for the

restriction to be imposed pursuant to this Consent Decree, and (e) has been approved by EPA, in

consultation with PADEP, in writing.  If EPA, in consultation with PADEP, does not object to the

proposed appraiser within 60 days following notification of the selection of the proposed

appraiser, the proposed appraiser shall be approved for the purpose of performing the appraisal.

If EPA, in consultation with PADEP, does not object to the appraised difference in value within

30 days of receipt of the appraisal, then that figure shall be the Fair Market Value for the purposes

of this Consent Decree.  If EPA, in consultation with PADEP, objects to the appraised difference

in value as not complying with the UASFLA standards within 30 days of receipt of the appraisal,

then CALLC shall have the option, but not the obligation, to pursue an alternative appraisal in

accordance with the procedures and timing requirements provided herein.  If the Parties cannot

otherwise resolve EPA's objection, then the Fair Market Value shall be determined pursuant to

the Dispute Resolution provisions in Section XI of this Consent Decree.

37843329.2

EXECUTION COPY

"Limit of Disturbance" means the outermost boundary of the area disturbed by construction, material storage, grading, grubbing, or landscaping as indicated by the green "Limit of Disturbance" line depicted on the Appendix A Figures.

"O&G Facility" or "O&G Facilities" means any impoundments, well pads, and associated access roads that were or will be constructed or modified by Defendant in the Commonwealth of Pennsylvania and that may result in any earth-disturbance activities.

"Qualified Wetlands Professional" (QWP) means an individual trained to identify potential aquatic resources by education and experience.  A QWP shall include one who has obtained a four-year degree in a wetland-related field and has completed at least a basic delineation training course (minimum of 24 hours of course time) in wetland science offered by professional trade associations, societies, government agencies or universities.

"Sites" mean the areas within the Limit of Disturbance identified in Appendix A for the O&G Facilities constructed by CALLC prior to January 1, 2015 that contain Appendix A Impact Polygons;

"Site-Specific Restoration Plan" or "SSRP" means a plan required by Appendix B of this Consent Decree submitted by Defendant to the Agencies that seeks to restore or obtain authorization for impacts to all or a portion of the aquatic resources within an Appendix A Impact Polygon.

"Water Resource" means waters of the United States or waters of the Commonwealth, or both.

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-806A-4589D8AFA9E3

EXECUTION COPY

## III.   APPLICABILITY

4.     The obligations of this Consent Decree shall apply to and be binding upon

Defendant, its officers, directors, agents, employees and servants, and its successors and assigns

or other entities or persons otherwise bound to this Consent Decree by law, and the Plaintiffs.

Defendant agrees that any plan of reorganization in bankruptcy for Defendant will make this

consent decree binding upon reorganized Defendant.  Defendant and its successors and assigns

are responsible for compliance with the CWA, Pennsylvania Law, and this Consent Decree at all

Sites, and at any onsite or offsite permittee-responsible mitigation project to be completed or

funded by Defendant in accordance with Paragraph 25 and Appendix B of this Consent Decree.

The return to compliance obligations described in Appendix B are injunctive obligations to

remediate continuing violations alleged in the Complaint and include actions necessary to comply

with the regulations, repair the environment, and in some circumstances to facilitate ongoing

operation of some facilities.  The Parties intend that these obligations are not claims within the

meaning of 11 U.S.C. § 101(5), and are requirements necessary to continue operations under

Pennsylvania Law. Appendix B utilizes environmental regulation terms of art including

"Mitigation," from the federal and state regulatory programs, as defined in relevant law.  The

Parties intend that any proceeding under bankruptcy should not impair Defendant and its

successors and assigns from complying with these obligations.  Defendant shall provide a copy of

this Consent Decree to all of its officers, employees, and agents whose duties might reasonably

include compliance with any provision of this Consent Decree, as well as to any contractor

retained to perform work which affects the obligations contained in this Consent Decree. When

37843329.2

DocuSign Envelope ID: 6E37E562-B58F-4C4A-806A-4589D8AF5A9E3

EXECUTION COPY

providing copies of the Consent Decree as required by this Paragraph, Defendant shall include a written statement advising all officers, employees, agents, and contractors that they must comply with the relevant obligations contained in this Consent Decree.  In any action to enforce this Consent Decree against Defendant, Defendant shall not raise as a defense the failure of any of its officers, directors, agents, employees, contractors, successors or assigns, including permit transferees, or any person, firm or corporation (including, but not limited to, contractors of Defendant) acting in concert or participation with Defendant, to take any actions necessary to comply with the provisions hereof; provided, however, that:

(a)     If any Site is owned or controlled by persons other than Defendant, Defendant shall use best efforts to secure from such persons an agreement to provide access to the Site for Defendant, the United States, the State, and their representatives, contractors, and subcontractors, to conduct any activity pursuant to the Consent Decree.  "Best efforts" for the purposes of this paragraph includes efforts commenced no later than 30 days after the Agencies' approval of a Site-Specific Restoration Plan (SSRP) pursuant to Section II.A of Appendix B of this Consent Decree, and, to the extent Defendant's access rights at any Sites are insufficient to implement the applicable SSRP, includes an offer of reasonable compensation to obtain such additional rights.

(b)     If, within 90 days of the Agencies' approval of an SSRP, Defendant has not obtained an agreement to provide access as described above, Defendant shall promptly notify the Agencies in writing at the addresses set forth in Section XIV of the Consent Decree, and shall include in that notification a summary of the steps that Defendant has taken to attempt to comply

15

EXECUTION COPY

with this Section III.4 of this Consent Decree.  The Agencies may, in their unreviewable

discretion, assist Defendant in obtaining access.  If Defendant has used best efforts and access is

not obtained by Defendant or the Agencies for any reason, and Defendant is unable to complete

its obligations under the Consent Decree, then Defendant shall, consistent with Appendix B of

this Consent Decree, provide Mitigation to off-set the loss of any areas that could not be restored

due to lack of access.

5.       No transfer of any ownership or operation of any O&G Facility containing an

Appendix A Impact Polygon or any onsite or offsite permittee-responsible mitigation project to be

completed or funded by Defendant in accordance with Paragraph 25 and/or Appendix B of this

Consent Decree, whether in compliance with the procedures of this Paragraph or otherwise, shall

relieve Defendant, its corporate successors or assigns, including reorganized Defendant, of its

obligation to ensure that the terms of the Consent Decree are implemented.  At least 15 days prior

to such transfer, Defendant, its corporate successors or assigns, including reorganized Defendant,

shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously

provide confidential written notice of the prospective transfer, including the identity of the

prospective transferee, to the Plaintiffs (at the addresses specified in Section XIV below) that such

notice has been given.   Any attempt to transfer ownership or operation of any O&G Facility

containing an Appendix A Impact Polygon or any onsite or offsite permittee-responsible

mitigation project to be completed or funded by Defendant in accordance with Paragraph 25

and/or Appendix B of this Consent Decree without complying with this Paragraph constitutes a

violation of this Consent Decree.  As a condition to any such future transfer, Defendant, its

corporate successors or assigns, including reorganized Defendant, shall reserve all rights

necessary to comply with the obligations of Paragraph 25 and/or Appendix B of this Consent

Decree.

## IV.    SCOPE AND EFFECT OF CONSENT DECREE

6.      Compliance with this Consent Decree shall constitute a complete and final

settlement of all civil and administrative causes of action alleged in the Complaint in relation to

the Sites, including (a) causes of action for injunctive relief and penalties against Defendant under

CWA Sections 301 and 404, and under Pennsylvania Law, concerning discharge of dredged

and/or fill material to waters of the United States and/or waters of the Commonwealth, and (b)

causes of action under Pennsylvania Law arising from the creation of unauthorized

encroachments, water obstructions and earth disturbance activities and stormwater management.

Accordingly, Plaintiffs hereby release Defendant from, and covenant not to sue Defendant again

with respect to, all claims for injunctive relief and penalties alleged (or that could have been

alleged under (a) or (b) as set forth above in this Paragraph) in the Complaint against Defendant

for impacts that occurred at the Sites on or before January 1, 2015.  Plaintiffs reserve all rights to

take any cause of action against Defendant and any successors and assigns to compel compliance

with any state or federal law for impacts not within the release set forth in this Paragraph.

7.      It is the express purpose of the Parties in entering into this Consent Decree to

further the objectives set forth in CWA Section 101, 33 U.S.C. §§ 1251 & 1344 and Pennsylvania

Law.  All plans, studies, construction, remedial maintenance, compliance programs, and other

obligations in this Consent Decree or resulting from the activities required by this Consent Decree

shall have the objective of causing Defendant to achieve and maintain compliance with, and to further the purposes of, the CWA and Pennsylvania Law.

8.      Nothing in this Consent Decree shall bind the Agencies or Defendant to accept delineations or other identifications of aquatic resources provided by CALLC in connection with this matter and set forth in Appendix A for any purpose other than actions undertaken to implement the terms and conditions of this Consent Decree and its Appendix B.  Neither the Agencies nor Defendants are bound to accept the delineations or other identifications in Appendix A for purposes unrelated to implementation of the terms and conditions of this Consent Decree and its Appendix B, including for any future earth disturbance activities by CALLC, as that term is used in Pennsylvania Law, or any future discharge of dredged or fill material at any of the Sites by CALLC.  In the event CALLC undertakes future activities at any Site unrelated to implementation of this Consent Decree and its Appendix B, CALLC's obligations under applicable law to submit to the appropriate authorizing agency any delineation of aquatic resources shall not be relieved or otherwise satisfied by this Consent Decree or the delineations submitted pursuant hereto.  Except with respect to the causes of action pertaining to the Sites that have been specifically resolved in Paragraph 6 of this Consent Decree, nothing in this Consent Decree shall be construed as a determination by the Agencies that there are no other unauthorized impacts at the O&G Facilities.

9.      Defendant and its agents, successors and assigns are enjoined from further discharging any pollutant into waters of the United States and/or causing or contributing pollution to waters of the Commonwealth at or from the Appendix A Impact Polygons, and creating any

encroachments, water obstructions or earth disturbance activities and/or stormwater management, at or from the Appendix A Impact Polygons unless such action complies with the CWA and its implementing regulations, Pennsylvania Law, and this Consent Decree.

10.     Discharges of dredged or fill material necessary for work required by this Consent Decree must be authorized pursuant to Nationwide Permit 32, currently found at 82 Fed. Reg. 1,860 (Jan. 6, 2017), a Department of the Army Individual Permit, or the Pennsylvania State Programmatic General Permit ("SPGP") processes, and PADEP Water Obstruction and Encroachment Permits.  Such authorization shall be subject to the terms and conditions provided in those permits, and the terms and conditions of this Consent Decree, including Paragraph 25 and Appendix B.  Any earth disturbance and/or stormwater management activities will be undertaken in accordance with Title 25, Chapter 102 of Pennsylvania Law, including any permit requirements thereunder.

11.     This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit or state water quality certification issued pursuant to Sections 401, 402 or 404 of the CWA, 33 U.S.C. §§ 1341, 1342 or 1344, Pennsylvania Law or any other law, including local law.  Nothing in this Consent Decree shall limit the ability of: a) the U.S. Army Corps of Engineers (Corps) to issue, modify, suspend, revoke, or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c); or b) PADEP to issue, modify, suspend, revoke, or deny any individual or general permit authorization, or otherwise limit PADEP's ability to exercise its authority pursuant to Pennsylvania Law.  The

DocuSign Envelope ID: 6E37E562-B58F-4C4A-806A-4589D8AF49E2

EXECUTION COPY

Parties acknowledge that "after-the-fact permits" may be required from federal and/or

Pennsylvania permitting authorities as applicable where, pursuant to Appendix B, the impacts will

remain.  All work performed pursuant to this Consent Decree and Appendix B must be performed

consistent with the requirements of federal and Pennsylvania law.  Nothing in this Consent

Decree or Appendix B relieves Defendant from obtaining or complying with any necessary permit

or authorization required under federal, Pennsylvania or local law, including but not limited to PA

Chapter 102, for restoration or other work required by this Consent Decree or Appendix B.  The

Agencies agree that so long as CALLC complies with the terms of this Consent Decree and

Appendix B, the violations and impacts identified by CALLC in this Consent Decree shall not be

used to prevent or delay the issuance of any permits applied for by CALLC.

      12.     This Consent Decree in no way affects or relieves Defendant of its responsibility to

comply with any applicable federal, state, or local law, regulation, or permit.

      13.     This Consent Decree in no way affects the rights of the United States or PADEP as

against any person not a party to this Consent Decree.  This Consent Decree shall not be

construed to create rights in, or to grant any cause of action to, any party that is not a party to this

Consent Decree.

      14.     The United States and PADEP reserve any and all legal and equitable remedies

available to enforce the provisions of this Consent Decree and applicable law.

      15.     Except as set forth in Section I, nothing in this Consent Decree shall constitute an

admission of fact or law by any Party.

37843329.2

EXECUTION COPY

16.     In any subsequent administrative or judicial proceeding initiated by the United States or PADEP for injunctive relief, equitable relief, civil penalties, or other appropriate relief relating to Defendant, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or PADEP in the subsequent proceeding were or should have been brought in the instant case, except as specified in Paragraph 6 of this Consent Decree.

17.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## V.     CIVIL PENALTIES

18.     Defendant shall pay a civil penalty totaling one million, nine hundred thousand dollars ($1,900,000.00), with half of the total penalty, nine hundred and fifty thousand dollars ($950,000.00), to be paid to the United States and the other half, nine hundred and fifty thousand dollars ($950,000.00), to be paid to PADEP.

19.     The Parties agree that nine hundred, ninety-nine thousand, nine hundred ninety-nine dollars ($999,999.00), of the civil penalty is an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A).  The Parties agree that nine hundred thousand and one dollar ($900,001.00) of the civil penalty is an allowed general unsecured claim, which shall be paid in accordance with CALLC's plan of reorganization.  The Parties acknowledge that the civil penalty obligation set

EXECUTION COPY

forth in Paragraph 18 will be satisfied in a manner consistent with applicable rulings by the

Bankruptcy Court.

20.    To the extent that the civil penalty, as authorized by the Bankruptcy Court, is not

paid in full on a date consistent with the plan of reorganization, Defendant shall be liable for

interest on the unpaid portion of the civil penalty, as provided for in 28 U.S.C. § 1961, accruing as

of the fifth day following maturation of the penalty obligation as set forth in the plan of

reorganization.  The interest shall be computed daily from such accrual date until the date full

payment is made.  The interest shall also be compounded annually.

21.    Defendant shall make the above-referenced payment to the United States by

FedWire Electronic Funds Transfer ("EFT" or wire transfer) in accordance with the written

instructions to be provided by the United States Department of Justice, referencing EPA Region 3

and the DOJ case number  90-5-1-1-20432  .  Any payment received after 4:00 P.M. (Eastern

Time) will be credited on the next business day.

22.    At the time of making the payment to the United States as set forth in Paragraphs

18, 19, and 21, Defendant shall send by mail and email a copy of the EFT authorization form and

the EFT transaction record, together with a transmittal letter stating that the payment is for the

civil penalty owed pursuant to this Consent Decree in United States, et al. v. Chesapeake

Appalachia, LLC, and referencing the DOJ case number,  90-5-1-1-20432  , to the Department of

Justice and EPA at the addresses set forth in Section XIV of this Consent Decree.  Defendant

shall also send a copy of the EFT form, transaction record, and transmittal letter by email to

acctsreceivable.CINWD@epa.gov, and by mail to:

EXECUTION COPY

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

23.     Defendant shall make the payment to the Commonwealth of Pennsylvania, as

required by Paragraphs 18 and 19 above, by certified or cashier's check in the amount of 50% to

the Dams and Encroachments Fund, and in the amount of 50% to the Oil and Gas Fund.  The

payment to the Dams and Encroachments Fund shall be mailed to:

Andrew Klinger
Chief, Division of Wetlands, Encroachment and Training
Bureau of Waterways Engineering and Wetlands
Commonwealth of Pennsylvania Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101

and the Oil and Gas Fund payment shall be mailed to:

Jennifer Means
Program manager, Eastern Oil and Gas District
Commonwealth of Pennsylvania Department of Environmental Protection
208 West Third Street, Suite 101
Williamsport, PA 17701

24.     Defendant shall not deduct any penalties paid under this Consent Decree pursuant

to this Section or Section XIII (Stipulated Penalties) in calculating its federal, state, or local

income tax.  For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of (1) restoration, mitigation

and preservation; (2) compliance assurance program, (3) reporting requirements, and (4) retention

of records as required by Sections VI (Return to Compliance), VIII (Compliance Assurance) and

EXECUTION COPY

X (Retention of Records) of this Consent Decree is restitution or required to come into compliance with the law.

## VI.    RETURN TO COMPLIANCE

25.    With regard to each A-1 Impact Polygon in Appendix A, Defendant shall seek restoration permits and return to compliance with Sections 301(a) and 404 of the CWA and Pennsylvania Law by implementation and compliance with Appendix B.  With regard to each A-2 Impact Polygon in Appendix A, Defendant shall seek after-the-fact permits and return to compliance with Sections 301(a) and 404 of the CWA and Pennsylvania Law by implementation and compliance with Appendix B.  Notwithstanding the foregoing, Defendants may request written authorization from PADEP (in consultation with EPA) to seek an alternative return to compliance option for any specific Appendix A Impact Polygon.  Upon completion of the terms and conditions of Appendix B, Defendant shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, de-water, drain or otherwise disturb soils, vegetation, and/or Water Resources in any manner whatsoever at any such restored Water Resource at any A-1 Impact Polygon in Appendix A, except as approved by the permitting Agencies or except as consistent with any Conservation Easement or Deed Restriction obtained for the Appendix A Impact Polygon pursuant to Paragraph 26.

26.    For all A-1 Impact Polygons in Appendix A where, pursuant to the terms and conditions set forth in Appendix B, Defendant restores 0.50 or more acres of forested wetlands and/or 150 or more linear feet of stream to approximate pre-disturbance condition, Defendant shall seek to permanently preserve the restored area[s] from future disturbance as follows:

EXECUTION COPY

      (a)    Defendant shall make and document a reasonable attempt to secure and record either a Conservation Easement or a Deed Restriction in accordance with the parameters and procedures provided below:

      (i)    If Defendant obtains a Conservation Easement, Defendant shall record such Conservation Easement for the subject parcel with the deed recording office for the county where the parcel is located.  Each Conservation Easement shall comply with Pennsylvania's Conservation and Preservation Easements Act, 32 P.S. §§ 5051-5059, shall be substantially similar to the sample located at Appendix C, and shall identify EPA and the Corps as third-party beneficiaries with right of inspection and enforcement; or

      (ii)    If Defendant obtains a Deed Restriction, Defendant shall record such Deed Restriction for the subject parcel with the Office of Recorder of Deeds for the county where the parcel is located.  The Deed Restriction shall be substantially similar to the sample located at Appendix C and shall provide that each deed, title, or other instrument conveying an interest in the subject parcel shall contain a notice stating that the property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree.  Within 30 days after recording of the Deed Restriction Defendant shall give notice to the United States, EPA, the Corps, and PADEP at the addresses in Section XIV.

      (b)    For the purposes of this Paragraph, Defendant makes and documents a reasonable attempt to secure a Conservation Easement or a Deed Restriction by presenting the property owner with a certified letter, copied to EPA, the Department of Justice and the Corps, at

EXECUTION COPY

the addresses set forth in Section XIV below, setting forth an offer to purchase or otherwise

obtain the conservation easement or deed restriction for a price reflecting at least the Fair Market

Value for the conservation easement or deed restriction. Nothing in this Paragraph shall foreclose

Defendant from negotiating with the property owner or offering a price that is less than the Fair

Market Value or more than Fair Market Value in order to secure the conservation easement or

deed restriction. The Defendant may also document a reasonable attempt to secure a conservation

easement by presenting a letter to EPA, the Department of Justice, and the Corps at the addresses

set forth in Section XIV below, setting forth Defendant's efforts to secure a qualified conservation

easement holder and documenting that such efforts have been unsuccessful. Defendant may

submit a single letter documenting its efforts to secure a holder that applies to multiple A-1

Impact Polygons in Appendix A.  Defendant need not submit separate letters for each A-1 Impact

Polygon in Appendix A provided that Defendant documents that its efforts to secure a holder

apply to all or multiple A-1 Impact Polygons in Appendix A based upon common site

characteristics (such as size, etc.).

      (c)     In the event that Defendant is unable to secure a Conservation Easement or

Deed Restriction after making a reasonable attempt to do so as required by Paragraph 26(a), then

Defendant shall notify the Agencies by email at the addresses set forth below in Section XIV

within 200 days after approval of an SSRP pursuant to Appendix B.  Defendant shall provide

within 100 days of such notice additional Mitigation sufficient to off-set the loss of permanent

protection for the subject parcel or parcels by securing wetland or stream mitigation credits from a

mitigation bank whose primary service area includes the area of impacts, for a price that is equal

EXECUTION COPY

to the appraised value of such Conservation Easement.  If such mitigation credits are not available from any mitigation bank whose primary service area includes the area of impacts, CALLC must submit a proposal for the Agencies' approval to:  (i) seek an extension based upon a demonstration that such credits are reasonably expected to become available within the next 180 days, (ii) secure a similar amount of credits from a mitigation bank whose secondary service area includes the area of impacts, or (iii) secure a Conservation Easement or Deed Restriction to permanently protect another existing wetland or stream resource of the same size and resource type, and in the same watershed, as the impact area.

(d)     Copies of all Conservation Easements or Deed Restrictions shall be submitted to EPA and PADEP contemporaneously with their recordation; provided, however, that any Conservation Easements or Deed Restrictions not prepared substantially in the same form as the models identified in this paragraph shall be submitted at least 60 days prior to their recordation.

27.     If the Conservation Easements or Deed Restrictions described in Paragraph 26 are found to be materially defective or unlawful at any time, the United States may:  (1) enforce Paragraph 26 against Defendant, or its successors or assigns, to obtain or seek to obtain the granting of a conservation easement or deed restriction for the subject parcel that complies with applicable law; or (2) require additional Mitigation sufficient to off-set the loss of permanent protection of a specific site in accordance with Appendix B of this Consent Decree.

EXECUTION COPY

### VII.   WETLANDS MEETING THE DIAGNOSTIC ENVIRONMENTAL CHARACTERISTICS CRITERIA AFTER CONSTRUCTION

28.    The Agencies recognize that one or more of the diagnostic environmental characteristics used to identify wetlands may develop in response to groundwater and/or stormwater redirected, concentrated, or restricted from infiltration or runoff at a constructed facility.  This may result in formation of new wetlands or the reestablishment of former wetlands that had been altered and may have lacked one or more of the diagnostic environmental characteristics of wetlands prior to field work or construction activities by CALLC.  This is described in the U.S. Army Corps of Engineers' 1987 Wetlands Delineation Manual (therein referred to as "man-induced wetlands") and Regional Supplements (therein referred to as "recently developed wetlands").  *See* 1987 Manual at Part IV, Section F (Atypical Situations), paragraphs 71.c & Subsection 4, paragraph 76.  *See also* Regional Supplement to the Corps of Engineers Wetland Delineation Manual: Eastern Mountains and Piedmont, Northcentral and Northeast Region (Version 2.0), Chapter 5 Difficult Wetland Situations in the Northcentral and Northeast Region, Problematic Hydric Soils, no. 5 Recently Developed Wetlands (Page 129). Sites identified in Appendix A may include polygons that have not been disclosed as impacts because CALLC asserts those are man-induced wetlands that were created by CALLC's activities.  For purposes of this Consent Decree, the Agencies take no position on whether these features are man-induced.  Regardless of how created or reestablished, the Parties agree that these polygons are wetlands.  Consistent with Paragraph 8 of this Consent Decree, if CALLC proposes to conduct any activities regulated under the Clean Water Act or Pennsylvania Law within these polygons, permits may be required from the Corps and PADEP.  Corps and PADEP permits are

28

not required for activities in or affecting these polygons that the Agencies determine are not

regulated under the Clean Water Act or Pennsylvania Law.  For any future earth disturbance

activities by CALLC, as that term is used in Pennsylvania Law, or any future discharge of

dredged or fill material that would impact these polygons, CALLC shall consult with PADEP

regarding the need for permits, and PADEP will review any permit applications or restoration

plans proposing to restore such Sites to approximate original contours in a manner consistent with

Pennsylvania Law.

### VIII.   COMPLIANCE ASSURANCE PROGRAM

29.     CALLC acknowledges that the term "post construction drainage feature" or

"PCDF" is not a term utilized in the federal Clean Water Act, the Pennsylvania CSL, the DSEA,

or their implementing regulations and guidance.

30.     In future applications under the federal Clean Water Act for the discharge of

dredged or fill material by CALLC, or applications under the Pennsylvania CSL, DSEA, or O&G

Act for any future earth disturbance activities by CALLC, CALLC will identify features that

CALLC believes satisfy the criteria in the 1987 Manual and/or applicable Regional Supplements

as wetlands.  Where CALLC seeks to identify potential wetland features within a geographic area

that has been altered by recent human activities or natural events, CALLC shall refer to and,

where appropriate, apply Part IV, Section F of the 1987 Corps of Engineers Wetlands Delineation

Manual and Chapter 5 of the applicable Regional Supplement.  Where CALLC believes that a

wetland feature qualifies as a man-induced wetland (either because it is new or because a wetland

has re-established), CALLC will call that feature to the attention of the regulating authority in the

DocuSign Envelope ID: 6E37F562-B58F-4C4A-806A-4589D8AF49E3

EXECUTION COPY

application and provide available supporting data, including but not limited to, information regarding man-induced changes in hydrology in the area, historical aerial photographs, all relevant pre-construction survey information, and soils data collected consistent with the 1987 Manual, Part IV, Sections D and E and the applicable Regional Supplement.  The regulating authorities will not grant powers, duties, or jurisdictional authority to CALLC, but may choose to accept CALLC's opinion if the evidence is reliable and convincing or may choose to make inspection of these features as necessary to determine final compliance or jurisdiction.

31.    CALLC shall comply with all post construction stormwater management requirements set forth in Pennsylvania Law and requirements set forth in Appendix B of this Consent Decree.  During the term of this Consent Decree, for all CALLC operations in Pennsylvania that require restoration pursuant to 58 P.S. § 3216 of the 2012 Oil and Gas Act, CALLC shall provide the Agencies with written notice and CALLC's delineation of aquatic resources at least 60 calendar days prior to commencement of restoration to allow the Agencies opportunity to visit the location and confirm CALLC's delineation of aquatic resources.  CALLC may not commence restoration until one of the following has occurred: (a) a representative of the Agencies has confirmed CALLC's delineation of aquatic resources (disturbed and undisturbed) at the location in writing, or requested additional time to conduct a site visit; or (b) 60 calendar days has passed from the date of the written notice and no representative from any of the Agencies has challenged the delineation in writing, and any required permits under the Clean Water Act and Pennsylvania Law have been obtained.

EXECUTION COPY

32.    List of Facilities.  For a period of two years after the entry of this Consent Decree, Defendant shall establish and provide to EPA, the Corps, and PADEP, upon their written request as specified below, at the mail and email addresses set forth in Section XIV, a list of all O&G Facilities.  The list required by this Paragraph shall identify the latitude/longitude of each such facility, the county where the facility is located, and the type of operation; provided, however, that nothing in this Paragraph shall preclude EPA, the Corps, or PADEP from requesting additional information in accordance with applicable law and regulation.  Within 30 days of a written request by EPA, the Corps, or PADEP, a current list shall be provided to representatives of EPA, the Corps, and/or PADEP and shall include any such facilities existing or under construction as of the date of the request.

33.    Designation of Pennsylvania Compliance Representative.

(a)    Within 21 days after the entry of this Consent Decree, Defendant shall designate, and for a period of two years thereafter shall maintain, one Pennsylvania Compliance Representative with responsibility for oversight of all activities that involve or may involve discharges of dredged or fill material into waters of the United States or earth disturbance activities, post construction stormwater management, or encroachments and/or water obstructions in, along, across, or projecting into waters of the Commonwealth for each of the O&G Facilities owned or operated by CALLC with A-1 Impact Polygons.  The Pennsylvania Compliance Representative must:

31

EXECUTION COPY

   (i) be an employee of Defendant with experience and knowledge in the field of post construction stormwater management and the best management practices to be used in the control of stormwater;

   (ii) serve as Defendant's point of contact for EPA, the Corps, and PADEP with respect to matters involving Defendant's compliance with the CWA and the Pennsylvania Law, as each is applied to the discharge of dredged and/or fill material, and water obstructions and/or encroachments for O&G Facilities;

   (iii) be authorized by Defendant and have the responsibility to supervise all work necessary to meet the requirements of Sections 301 and 404 of the CWA and the requirements of the Pennsylvania Law, as each is applied to the discharge of dredged and/or fill material, at O&G Facilities; and

   (iv) be responsible for providing and updating the list of facilities described in Paragraph 32 above.

   (b) If the position of Pennsylvania Compliance Representative becomes vacant and Defendant replaces him or her within 30 days of the vacancy, the gap in designation shall not be considered a violation of Paragraph 33.  However, the gap in designation shall not excuse non-compliance with any other requirement of this Consent Decree.  Defendant shall notify EPA, PADEP, and the Corps of any change in a Pennsylvania Compliance Representative within fifteen days of the hiring or designation of such replacement.

37843329.2

EXECUTION COPY

## IX.    NOTICES AND OTHER SUBMISSIONS

34.    Until such time as Defendant certifies completion of all tasks required by

Paragraph 25 and Appendix B of this Consent Decree, except for the monitoring requirements set

forth in Appendix B, on or before each March 30 and September 30 Defendant shall provide the

United States and PADEP with a written status report detailing Defendant's progress toward

completing all tasks required by this Consent Decree.  Defendant shall designate in the written

status report the individual with responsibility for oversight of activities regulated under

Pennsylvania Law at each of the O&G Facilities owned or operated by CALLC in Pennsylvania.

The status report shall be sent to the mail and email addresses specified in Section XIV of this

Consent Decree.  Defendant shall be considered to have timely submitted a status report by

emailing it to each of the Plaintiffs on the required date, with copies to be sent via first-class U.S.

mail as well.

35.    If a required task has been completed, the notice shall specify the date when it was

completed.  If the required task was completed after the scheduled time for such completion

required by the Consent Decree, the notice shall explain the reasons for such delay.

36.    In all notices, documents or reports submitted to the United States and to PADEP

pursuant to this Consent Decree, the Defendant shall, by signature of a senior management

official with the requisite authority, certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared
> under my direction or supervision in accordance with a system designed to assure
> that qualified personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the system, or those
> persons directly responsible for gathering such information, the information
> submitted is, to the best of my knowledge and belief, true, accurate and complete.

EXECUTION COPY

I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## X.    RETENTION OF RECORDS AND RIGHT OF ENTRY

37.    Until this Consent Decree is terminated, and for three years after the Consent Decree is terminated, Defendant shall preserve and retain all records, documents, and information of any kind, including but not limited to electronically stored information, now in its possession or control or which come into its possession or control that relate in any manner to the performance of the tasks in Sections VI and VIII of this Consent Decree (including all referenced Appendices), regardless of any corporate retention policy to the contrary (Document Retention Period).  During the existence of this Consent Decree, Defendant shall require that its contractors and agents preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the tasks in Sections VI and VIII of this Consent Decree (including all referenced Appendices).

38.    At the conclusion of the Document Retention Period, Defendant shall notify the United States and PADEP at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or PADEP, Defendant shall deliver any such records or documents to EPA or PADEP, as applicable and to the extent required by law. Defendant may assert that all or portions of such records or documents include confidential business information ("CBI") as defined in 40 C.F.R. §§ 2.201-2.215, and "confidential proprietary information" as defined in Pennsylvania Right-to-Know Law, 65 P.S. §§ 67.101-67.3014.  If Defendant asserts that all or portions of such records or documents include CBI, EPA, the Corps, and PADEP will evaluate the claimed confidentiality and, if the agencies agree

34

with the CALLC assertion, each shall follow their existing procedures for handling CBI.  See 40

C.F.R. §§ 2.201-2.215 and 2.302; 32 C.F.R. §§ 286.12(d), and 518.13(d); Pennsylvania Right-to-

Know Law, 65 P.S. §§ 67.101-67.3014.  The Defendant may also assert that certain documents,

records and other information are privileged under the attorney-client privilege or any other

privilege recognized by federal law.  If the Defendant asserts such a privilege, it shall provide the

United States or PADEP, as applicable, with the following: (1) the title of the document, record,

or information; (2) the date of the document, record, or information; (3) the name and title of the

author of the document, record, or information; (4) the name and title of each addressee and

recipient; (5) a description of the subject of the document, record, or information; and (6) the

privilege asserted by Defendant.  However, no final documents, reports or other information

required to be created or generated pursuant this Consent Decree shall be withheld on the grounds

that they are privileged.

     39.   <u>Inspections</u>.

     (a)   Until termination of this Consent Decree, Defendant shall give its consent

to the United States, PADEP, and their authorized representatives and contractors at all

reasonable times to safely enter the Sites, Mitigation sites, and/or O&G Facilities owned or

operated by Defendant to perform the activities set forth in this Paragraph.  The Parties

acknowledge that there may be locations not owned by Defendant at which consent of additional

parties or other authorization for entry may be necessary.

     (i)   Monitor the activities required by this Consent Decree;

EXECUTION COPY

(ii)     Verify any data or information submitted to the United States or

PADEP pursuant to this Consent Decree;

(iii)    Obtain samples or other information as authorized by section 308 of

the CWA, 33 U.S.C. § 1318;

(iv)    Inspect and evaluate Defendant's restoration, mitigation and/or

preservation activities taken pursuant to this Consent Decree; and

(v)     Inspect and review any records required to be kept under the terms

and conditions of this Consent Decree and the CWA.

(b)     This Paragraph of this Consent Decree is in addition to, and in no way

limits or otherwise affects, the statutory authorities of the United States or PADEP to conduct

inspections, to require monitoring and to obtain information from the Defendant as authorized by

law.

## XI.     DISPUTE RESOLUTION

40.     Unless otherwise expressly provided for in this Consent Decree, including the

provisions in Paragraph 44 of this Consent Decree and Appendix B, the dispute resolution

procedures of this Section XI shall be the exclusive mechanism to resolve disputes arising under

or with respect to this Consent Decree.

41.     Except as provided for in Paragraph 40 above, any dispute that arises with respect

to the meaning or requirements of this Consent Decree shall be, in the first instance, the subject of

informal negotiations between the Parties to attempt to resolve such dispute.  The period for

informal negotiations shall not extend beyond sixty (60) days beginning with written notice by

EXECUTION COPY

one Party to the other affected Party or Parties that a dispute exists, unless agreed to in writing by

those Parties.  If a dispute between the United States and/or PADEP, on the one hand, and

Defendant, on the other, cannot be resolved by informal negotiations, then the written position

advanced by the United States with the concurrence of PADEP and provided to Defendant shall

be considered binding unless, within thirty (30) days after the later of Defendant's receipt of such

written position or the end of the informal negotiations period, the Defendant files a motion with

the Court seeking resolution of the dispute.  The motion shall set forth the nature of the dispute

and a proposal for its resolution.  The United States, in consultation with PADEP, shall have

thirty (30) days to respond to the motion and propose an alternate resolution.  In resolving any

such dispute, Defendant shall bear the burden of proving by a preponderance of the evidence that

Defendant's position will achieve compliance with the terms and conditions of this Consent

Decree and the CWA (and Pennsylvania Law, as applicable).

     42.    If the United States or PADEP believes that a dispute is not a good faith dispute, or

that a delay would pose or increase a threat of harm to the public or the environment, the United

States or PADEP may move the Court for a resolution of the dispute prior to the expiration of the

sixty (60) day period for informal negotiations. Defendant shall have fourteen (14) days to

respond to the motion and propose an alternate resolution.  In resolving any such dispute,

Defendant shall bear the burden of proving by a preponderance of the evidence that the United

States' position is not in accordance with the terms and conditions of this Consent Decree, and

Defendant's position will achieve compliance with the terms and conditions of this Consent

Decree and the CWA (and Pennsylvania Law, as applicable).

37843329.2

EXECUTION COPY

43.      The filing of a motion asking the Court to resolve a dispute shall not extend or

postpone any obligation of Defendant under this Consent Decree, except as provided in Section

XIII below regarding payment of stipulated penalties.

44.      Permit Processing Challenges.  The following challenges shall not be subject to the

dispute resolution procedures set forth in this Section XI, except as expressly provided for in

Paragraph 44(b) of this Consent Decree.

(a)      Any challenges to a PADEP "action," as that term is defined in the

regulations of the Pennsylvania Environmental Hearing Board (EHB), taken pursuant to

Appendix B of this Consent Decree, must be filed with the EHB.

(b)      Any challenges to a denial or proffered permit from the Corps must be filed

with the U.S. Army Corps of Engineers, North Atlantic Division (NAD) within 60 days of the

appealable decision.  Any disagreements regarding other Corps decisions, such as a decision to

consider an application withdrawn, or a decision to disapprove an SSRP, shall be addressed

through Dispute Resolution pursuant this Section XI.

## XII.    FORCE MAJEURE

45.      Defendant shall perform the actions required under this Consent Decree within the

time limits set forth or approved herein, unless the performance is prevented or delayed solely by

events which constitute a Force Majeure event.  A Force Majeure event is defined as any event or

series of related events arising from causes beyond the control of Defendant, including its

employees, agents, consultants and contractors, which could not be overcome by due diligence

and which delays or prevents the performance of an action required by this Consent Decree within

37843329.2

EXECUTION COPY

the specified time period.  A Force Majeure event does not include, <u>inter alia</u>, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a Site.  A Force Majeure event also does not include failure to obtain federal, state, or local permits.

46.     If Defendant believes that a Force Majeure event has affected its ability to perform any action required under this Consent Decree, Defendant shall notify the United States and PADEP in writing within ten (10) calendar days after the Force Majeure event at the addresses listed in Section XIV.  Such notice shall include a discussion of the following:

A.      what action has been affected;

B.      the specific cause(s) of the delay;

C.      the length or estimated duration of the delay; and

D.      any measures taken or planned by Defendant to prevent or minimize the delay and a schedule for the implementation of such measures.

Defendant may also provide to the United States and PADEP any additional information that Defendant deems appropriate to support its conclusion that a Force Majeure event has affected its ability to perform an action required under this Consent Decree.  Failure to provide timely and complete notification to the United States and PADEP shall constitute a waiver of any claim of Force Majeure as to the event in question.

47.     If the United States, after a reasonable opportunity for consultation with PADEP, determines that the conditions constitute a Force Majeure event, then the deadline for the affected

EXECUTION COPY

action shall be extended by the amount of time of the delay caused by the Force Majeure event or

such other date as agreed upon in writing by the Parties.  Defendant shall coordinate with the

United States and PADEP to determine when to begin or resume the operations that had been

affected by any Force Majeure event.

48.     If the Parties are unable to agree whether the conditions constitute a Force Majeure

event, or whether the length of time for fulfilling the provision of the Consent Decree at issue

should be extended, Defendant or the United States (in consultation with PADEP) may seek a

resolution of the dispute under the procedures in Section XI of this Consent Decree.

49.     Defendant shall bear the burden of proving: (1) that the noncompliance at issue

was caused by circumstances entirely beyond the control of Defendant and any entity controlled

by Defendant, including its contractors and consultants; (2) that Defendant or any entity

controlled by Defendant could not have avoided or prevented noncompliance by due diligence;

and (3) the number of days of noncompliance that were caused by such circumstances.

## XIII.   STIPULATED PENALTIES

50.     After entry of this Consent Decree, if Defendant fails to timely fulfill any

requirement of the Consent Decree (including Appendix B and Appendix D), then Defendant

shall pay a stipulated penalty to the United States and PADEP for each violation of each

requirement of this Consent Decree as follows:

| | | |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1,000.00 per day |
| B. | For Day 31 up to and including 60 of non-compliance | $2,000.00 per day |

37843329.2

EXECUTION COPY

      C.     For Day 61 and beyond           $3,000.00 per day
              of non-compliance

A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.  Stipulated penalties under this Section XIII shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

51.     Defendant shall pay any stipulated penalty within forty-five (45) days of the date Defendant receives a demand by either Plaintiff.  The Plaintiff making the demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff by electronic or first-class mail and to: (i) EPA via email to the U.S. EPA Cincinnati Finance Office at CINWD_AcctsReceivable@epa.gov; (ii) EPA via email to the U.S. EPA Regional Hearing Clerk at R3_Hearing_Clerk@epa.gov.  Defendant shall pay 50 percent of the total stipulated penalty amount to the United States and 50 percent to PADEP.

52.     Either the United States or PADEP may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties that would otherwise be due to it under this Consent Decree.

EXECUTION COPY

53.     Any disputes concerning the amount of stipulated penalties, or the underlying

violation that gives rise to the stipulated penalties shall be resolved pursuant to the Dispute

Resolution provisions in Section XI.

54.     The filing of a motion requesting that the Court resolve a dispute shall stay

Defendant's obligation to pay any stipulated penalties with respect to the disputed matter pending

resolution of the dispute.  Notwithstanding the stay of payment, stipulated penalties shall continue

to accrue from the first day of any failure or refusal to comply with any term or condition of this

Consent Decree until such failure or refusal to comply is resolved.  In the event that Defendant

does not prevail on the disputed issue, accrued stipulated penalties shall be paid by Defendant as

provided in this Section.

55.     To the extent Defendant demonstrates to the Court that a delay or other non-

compliance was due to a Force Majeure event (as defined in Section XII above) or otherwise

prevails on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-

compliance.

56.     In the event that a stipulated penalty payment is applicable and not made on time,

Defendant shall be liable for interest on such penalties in accordance with the statutory judgment

interest rate provided for in 28 U.S.C. § 1961.  The interest shall be computed daily from the time

the payment is due until the date the payment is made.  The interest shall also be compounded

annually.  Nothing in this Paragraph shall be construed to limit the United States or PADEP from

seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated

penalties.

57.    Defendant shall make any payment of a stipulated penalty to the United States by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with written instructions to be provided by the United States Department of Justice, referencing EPA Region 3 and the DOJ case number 90-5-1-1-20432____.  Any payments received after 4:00 P.M. (Eastern Time) will be credited on the next business day.  Further, at the time of the making the payment as set forth in this Paragraph, Defendant shall send by mail a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter stating that the payment is for stipulated penalties owed pursuant to this Consent Decree in United States, et al. v. Chesapeake Appalachia, LLC, and referencing the DOJ case number, 90-5-1-1-20432___, to the Department of Justice and EPA at the addresses set forth in Section XIV of this Consent Decree.  Defendant shall also send a copy of the EFT form, transaction record, and transmittal letter and a notice of payment (containing the case name, civil action number, the Consolidated Debt Collection System ("CDCS") Number and DOJ case number (if applicable); the amount of the payment; and the method of payment) by electronic mail to acctsreceivable.CINWD@epa.gov and to R3_Hearing_Clerk@epa.gov, and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

58.    Defendant shall make any payment of a stipulated penalty to the Commonwealth of Pennsylvania by corporate check or the like, 50% made payable to the Pennsylvania Oil and Gas Fund and 50% to the Pennsylvania Dams and Encroachment Fund.  Payment to the Pennsylvania Oil and Gas Fund shall be mailed to:

43

EXECUTION COPY

Jennifer Means
Program Manager, Eastern Oil and Gas District
Commonwealth of Pennsylvania Department of Environmental Protection
208 West Third Street, Suite 101
Williamsport, PA 17701

Payment to the Pennsylvania Dams and Encroachment Fund shall be mailed to:

Andrew Klinger
Chief, Division of Wetlands, Encroachment and Training
Bureau of Waterways Engineering and Wetlands Commonwealth of Pennsylvania
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101

59.     Subject to Paragraph 6 of this Consent Decree, the stipulated penalties provided for

in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to

the United States or PADEP for Defendant's violation of this Consent Decree or applicable law.

XIV.   ADDRESSES

60.     All notices and communications required under this Consent Decree shall be made

to the Parties through each of the following persons and addresses.  The Parties may notify other

Parties of a change in contact information without seeking modification of the Consent Decree.

A.     TO EPA:

(1)     Stefania D. Shamet
Senior Assistant Regional Counsel
Water and General Law Branch
Office of Regional Counsel
United States Environmental Protection Agency
Region III
MC 3RC60
1650 Arch St.
Philadelphia, PA  19103-2029
Shamet.Stefania@epa.gov

44

EXECUTION COPY

    (2)     SDWA/Wetlands Section Chief
            Enforcement and Compliance Assurance Division
            United States Environmental Protection Agency
            Region 3
            MC 3ED31
            1650 Arch St.
            Philadelphia, PA  19103-2029

B.     <u>TO THE UNITED STATES DEPARTMENT OF JUSTICE</u>

            Laura Brown
            Trial Attorney
            Environmental Defense Section
            Environment and Natural Resources Division
            U.S. Department of Justice
            P.O. Box 7611
            Washington, D.C. 20044-7611
            Laura.J.S.Brown@usdoj.gov

C.     <u>TO THE CORPS</u>:

            Katherine T. Wainwright
            Assistant District Counsel
            U.S. Army Corps of Engineers
            Baltimore District
            2 Hopkins Plaza
            Baltimore, Maryland 21201
            Katherine.T.Wainwright@usace.army.mil

            and

            Don Bole
            Chief, Enforcement & Compliance, CENAB-OPR
            2 Hopkins Plaza
            Baltimore, MD 21201
            Donald.R.Bole@usace.army.mil

37843329.2

EXECUTION COPY

     D.     <u>TO PADEP</u>:

          Jennifer Means
          Program Manager, Eastern Oil and Gas District
          Commonwealth of Pennsylvania Department of Environmental Protection
          208 West Third Street, Suite 101
          Williamsport, PA 17701

          Margaret O. Murphy
          Assistant Counsel
          Office of Chief Counsel
          Commonwealth of Pennsylvania Department of Environmental Protection
          Rachel Carson State Office Building
          400 Market Street
          Harrisburg, PA 17101

          Andy Klinger
          Chief, Division of Wetlands, Encroachment and Training
          Commonwealth of Pennsylvania Department of Environmental Protection
          Rachel Carson State Office Building
          400 Market Street
          Harrisburg, PA 17101

     E.     <u>TO DEFENDANT</u>:

          Miles Tolbert
          Vice-President and Associate General Counsel
          Chesapeake Appalachia, LLC
          6100 N. Western Avenue
          Oklahoma City, OK 73118
          Miles.Tolbert@chk.com

          and

          Cassi Moore
          Senior HSE Representative
          Chesapeake Appalachia, LLC
          6100 N. Western Avenue
          Oklahoma City, OK 73118
          Cassi.Moore@chk.com

EXECUTION COPY

## XV.   COSTS OF SUIT

61.    Each Party to this Consent Decree shall bear its own costs and attorneys' fees in this action, except that the United States and/or PADEP shall be entitled to collect the costs (including attorneys' fees) incurred in any judicial or legal action necessary to enforce this Consent Decree, other than an action pursuant to the Dispute Resolution provisions set forth in Section XI, or to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.   PUBLIC COMMENT

62.    The Parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7 which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  Defendant agrees not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States and/or PADEP has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XVII.  CONTINUING JURISDICTION OF THE COURT

63.    This Court shall retain jurisdiction over this action in order to enforce or modify the Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may be necessary or appropriate for construction or execution of this Consent Decree, except as

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-806A-4589D8AFA9E2

EXECUTION COPY

otherwise set forth in Paragraph 44 (Permit Processing Challenges) of this Consent Decree.
During the pendency of the Consent Decree, any Party may apply to the Court for any relief
necessary to construe and effectuate the Consent Decree.

## XVIII. MODIFICATION

64.      Upon its entry by the Court, this Consent Decree shall have the force and effect of
a final judgment.  Any modification of this Consent Decree shall be in writing, and shall not take
effect unless signed by the United States, PADEP, and Defendant and approved by the Court;
provided, however, that schedules for the completion of tasks required by Sections VI and VIII,
including but not limited to Paragraph 25 and Appendix B and revisions to plans submitted and
approved pursuant to Appendix B, may be modified by written agreement of EPA (on behalf of
the United States), PADEP, and Defendant.

## XIX. TERMINATION

65.      This Consent Decree may be terminated by either of the following:

(a)      Defendant, the United States, and PADEP may at any time make a joint
motion to the Court for termination of this Consent Decree or any portion of it; or

(b)      After Defendant has paid the civil penalty and fulfilled all of the
obligations in Sections VI and VIII of this Consent Decree (including any compliance period
associated with those obligations), has complied with all other requirements of this Consent
Decree, including but not limited to completion of all actions described in Appendix B, and has
paid any accrued stipulated penalties as required by this Consent Decree, Defendant may serve a
Request for Termination on the United States, EPA and PADEP.  The Request for Termination

48

EXECUTION COPY

shall state that Defendant has satisfied all requirements of this Consent Decree, including but not

limited to all obligations in Sections VI and VIII.  The Request for Termination shall also include

supporting documentation sufficient to demonstrate that Defendant has satisfied the foregoing

criteria.  Following service of Defendant's Request for Termination, the Parties may confer

informally concerning the Request.

     (i)  If the United States and PADEP agree that the Consent Decree may

be terminated, the Parties shall submit, for the Court's approval, a joint stipulation to terminate

the Consent Decree.

     (ii)  If the United States or PADEP does not agree that the Consent

Decree may be terminated, then Defendant may submit a motion to the Court asking for

termination of the Consent Decree without invoking Dispute Resolution under Section XI of this

Consent Decree; provided, however, that Defendant shall not submit such motion until 90 days

after service of its Request for Termination on the United States and PADEP, and Defendant shall

bear the burden of proving by a preponderance of the evidence that Defendant's position is in

accordance with the terms and conditions of this Consent Decree and the requirements of the

CWA (and Pennsylvania Law, as applicable).

## XX. SIGNATORIES/SERVICE

  66.  Each of the undersigned certifies that he or she is fully authorized to enter into the

terms and conditions of this Consent Decree and to execute and legally bind the Party he or she

represents to this document.

37843329.2

EXECUTION COPY

67.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail or email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  APPENDICES

68.     The following appendices are attached to and part of this Consent Decree: Appendix A (Disclosure Table and Appendix A Figures), Appendix B (Return to Compliance Plan), Appendix C (USACOE Conservation Easement / Deed Restriction Samples), and Appendix D (Anticipated Permitting Schedule).


IT IS SO ORDERED.


Dated and entered this 20th day of May 2021.


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

37843329.2

DocuSign Envelope ID: 6E37E562-B58F-4C4A-806A-4589D8AF A9E2

EXECUTION COPY

**ON BEHALF OF THE UNITED STATES:**

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

*Laura J. Brown*
Laura J. Brown                               Dated: 12/30/2020

Trial Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-3376

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-906A-4580D8AFA9E3

EXECUTION COPY

**ON BEHALF OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY, OFFICE OF ENFORCEMENT AND COMPLIANCE ASSURANCE:**

Dated: 12/15/20

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-906A-4580D8AFA9E3

EXECUTION COPY

**ON BEHALF OF THE PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

_____      Dated: 12/15/2020
SCOTT R. PERRY
Deputy Secretary
Office of Oil and Gas Management
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____      Dated:_____
DIANA J. STARES
Acting Chief Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____      Dated:_____
MARGARET O. MURPHY
Assistant Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-906A-4580D8AFA9E3

EXECUTION COPY

**ON BEHALF OF THE PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

_____          Dated:_____
SCOTT R. PERRY
Deputy Secretary
Office of Oil and Gas Management
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____          Dated: _12_/_15_/_2020_
DIANA J. STARES
Acting Chief Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____          Dated:_____
MARGARET O. MURPHY
Assistant Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

DocuSign Envelope ID: 6E37F562-B58F-4C4A-906A-4580D8AFA9E3

EXECUTION COPY

**ON BEHALF OF THE PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

_____       Dated:_____

SCOTT R. PERRY
Deputy Secretary
Office of Oil and Gas Management
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____       Dated:_____

DIANA J. STARES
Acting Chief Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

_____       Dated: 12·15·2020

MARGARET O. MURPHY
Assistant Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101

37843329.2

DocuSign Envelope ID: 6E37F562-B58F-4C4A-806A-4589D8AFA9E2

EXECUTION COPY

**ON BEHALF OF DEFENDANT CHESAPEAKE APPALACHIA, LLC:**



378F2D55CF0A45F...

Dated: _____    12/14/2020 | 6:42:20 PM CST

RICH L. SNYDER
Vice-President
Chesapeake Appalachia, LLC
6100 N. Western Avenue
Oklahoma City, OK 73118

37843329.2