**Execution Copy**

## Appendix B: Return to Compliance Plan

**I.      Return to Compliance**

### A.      Return to Compliance Plan Incorporated into Consent Decree

This Return to Compliance Plan sets forth the procedures applicable to the work necessary by Chesapeake Appalachia, LLC ("CALLC" or "Defendant") to return to compliance the Impact Polygons listed in Appendix A to the Consent Decree among the United States of America, the Commonwealth of Pennsylvania, Department of Environmental Protection and the Defendant.  This Return to Compliance Plan is incorporated into and made a part of the Consent Decree.

### B.      Defendant is Responsible for Completion of Implementation

Defendant shall complete all actions to return to compliance in accordance with the options and provisions set forth below.  If Defendant does not complete the actions to return to compliance in accordance with approved timeframes or the timeframes set forth within this Appendix B and Appendix D, the Defendant shall be in violation of the Consent Decree, and subject to any remedies and/or penalties set forth in the Consent Decree.

### C.      Return to Compliance Schedule

CALLC and representatives of the U.S. Environmental Protection Agency (EPA), the U.S. Army Corps of Engineers (Corps), and the Pennsylvania Department of Environmental Protection (PADEP) (collectively the Agencies, or individually as the Agency) agree to the schedule for the submission of Site-Specific Restoration Plans (SSRPs) and applications for authorization to leave impacts from unauthorized activities in place as outlined in Appendix D.  Appendix D includes:  (1) a staggered schedule for the submission by CALLC of SSRPs and applications for authorization to leave impacts from unauthorized activities in place, and (2) a schedule for the implementation and completion by CALLC of the SSRPs and any approved mitigation plans or permits authorized to perform mitigation to offset impacts for Sites listed in Appendix A.

1.      The Agencies retain discretion after having conferred with each other to pause or extend the staggered schedule for CALLCs submission of SSRPs or applications listed in Appendix D.  Such extension would be communicated by PADEP to CALLC.

2.      When circumstances arise that delay successful implementation of the SSRPs or mitigation obligations, CALLC may request a reasonable extension of the timeframes proposed in Appendix D, to which PADEP, in consultation with the Federal Agencies, will respond in writing.

3.      If CALLC submits an SSRP or an application for which the impacts have not yet been adequately offset by approved mitigation, the Agencies will continue to review the completed parts of the SSRP or application.  If CALLC does not have approved mitigation to offset the impacts of the particular SSRP or application by the time the review of the rest of the SSRP or application is complete, PADEP will designate in writing the SSRP or application as

1

**Execution Copy**

"held in coordination" and PADEP will withhold approval or issuance until such time as mitigation is approved by the Agencies.

**II.     Actions to Return to Compliance**

**A.     Return to Compliance Option 1 – Full Restoration of Impacts Resulting from Unauthorized Work**

1.     For each A-1 Impact Polygon identified in Appendix A of the Consent Decree, Defendant shall seek authorization to restore all aquatic resources impacted by unauthorized work (proposed restoration) (as opposed to any future restoration that might be required pursuant to Pennsylvania's Oil and Gas Act), and no impacts from such unauthorized activities will be left unrestored.

2.     Defendant shall submit an SSRP for the A-1 Impact Polygons in accordance with the schedule referenced in Section I.C of this Appendix B.  As part of each SSRP, for each A-1 Impact Polygon, Defendant shall provide a plan, which shall include a detailed description of the work to be completed and performance standards for their proposed restoration activities, which will be used to determine successful restoration of the aquatic resource.  Defendant shall submit to the Agencies, in accordance with the approved schedule for implementation, an SSRP designed to restore the A-1 Impact Polygon to compliance.  Each SSRP shall include the parties' agreed upon delineation of impacted aquatic resources solely for purposes of the Consent Decree as described in Paragraph 8 of the Consent Decree.  The SSRP may be conditioned upon receipt of any required approvals or certifications as necessary, for which the Defendant shall make timely application and diligently pursue.  Copies of the SSRP shall be kept on site during all restoration activities.  Each SSRP shall be designed to restore the A-1 Impact Polygon to compliance through approval of a written Environmental Assessment pursuant to 25 Pa. Code §§ 105.12(a)(16) and 105.15(a) and any federal permit that may be required, addressing at a minimum the following:

a.     Restoration of aquatic resources impacted by unauthorized activities shall be consistent with the definition of restoration found in 40 C.F.R. § 230.92.  The SSRP also shall meet the requirements contained in 25 Pa. Code, Chapter 102, and: (i) ensure that restored areas are stabilized and designed to avoid and minimize landslides or slips; (ii) utilize only non-invasive species approved by DEP for planting; (iii) incorporate quantitative performance measures and aquatic resource condition assessments for pre and post-impact site conditions consistent with the Replacement Criteria of Section III of this Appendix B;  and (iv) include a post-restoration monitoring plan consistent with Sections III.B and IV of this Appendix B; and

b.     A mitigation plan and monitoring plan consistent with Section III of this Appendix B to the extent required by Pennsylvania law or the Clean Water Act ("CWA").

3.     PADEP, as the lead point of contact for the Agencies, will coordinate with EPA and the Corps for review and approval or disapproval of any SSRP.  The Federal Agencies in their discretion may require that an SSRP for any specific A-1 Impact Polygon include appropriate financial assurances sufficient to ensure a high level of confidence that the

2

**Execution Copy**

restoration will be completed in accordance with the applicable performance measures and determined consistent with 40 C.F.R. § 230.93(n).  After obtaining the concurrence of EPA and the Corps regarding consistency with the CWA and the Consent Decree, PADEP will notify Defendant whether any SSRP is approved as consistent or disapproved, in whole or in part, as inconsistent with the Consent Decree, Pennsylvania law, and the CWA.  For purposes of this Appendix B, Pennsylvania law includes but is not limited to the Pennsylvania Clean Streams Law, Pennsylvania Dam Safety and Encroachments Act, and the rules and regulations promulgated thereunder.

4.     If the Agencies identify technical deficiencies in an SSRP, Defendant shall, within 60 days of receipt of notice of such deficiencies, address them, and resubmit the SSRP for further review.  If the Agencies determine that the Defendant's submission does not resolve the identified deficiencies, the Agencies will either provide an additional opportunity for Defendant to resolve the identified deficiencies within 30 days, approve Defendant's SSRP with conditions, or deny Defendant's SSRP.

a.     If PADEP disapproves an SSRP, the Defendant may challenge the disapproval by filing an appeal with the Pennsylvania Environmental Hearing Board (EHB). Within 60 days from the denial, or, if a timely appeal is filed with the EHB, within 60 days from a final adjudication affirming the denial, Defendant shall submit a revised SSRP that is consistent with the EHB's ruling and meets the terms of the Consent Decree and this Appendix B.  CALLC's failure to submit a revised SSRP within this timeframe shall be considered a violation of the Consent Decree and the Defendant shall be subject to any remedies and/or penalties set forth in the Consent Decree.

b.     If the Federal Agencies disapprove an SSRP, the Defendant may dispute the disapproval through the Dispute Resolution procedures set forth in Section XI of the Consent Decree.  CALLC's failure to submit, within 60 days of the disapproval or of the conclusion of Dispute Resolution process (whichever is later), a revised SSRP that is consistent with the outcome of the Dispute Resolution process shall be a violation of the Consent Decree and the Defendant shall be subject to any remedies and/or penalties set forth in the Consent Decree.

5.     Upon approval of an SSRP, the SSRP is incorporated into this Appendix B, and Defendant shall implement the SSRP as approved by the Agencies.  Within 60 days of completing the restoration activities, the Defendant or its authorized agent shall submit "as-built" plans of the restoration activities to the Agencies.

**B.     Return to Compliance Option 2 – After the Fact Authorization**

1.     For each A-2 Impact Polygon identified in Appendix A of the Consent Decree, Defendant shall seek authorization to leave in place dredged and/or fill material under CWA Section 404 and 25 Pa. Code Chapter 105, and other impacts from unauthorized water obstructions or encroachments or earth disturbance activities under 25 Pa. Code Chapters 105 and 102 (hereinafter collectively "unauthorized activities").  PADEP is the lead point of contact for the Agencies.  Submission of documents and communications shall be provided consistent

3

**Execution Copy**

with Sections V and VI of this Appendix B. These A-2 Impact Polygons must meet the requirements of Section II.B.2, below.

        2.     Defendant shall submit Joint Permit applications or other appropriate permit applications for the A-2 Impact Polygons for authorization to leave impacts from unauthorized activities in place in accordance with the schedule referenced in Section I.C of this Appendix B. The permit applications shall include the parties' agreed-upon delineation of impacted aquatic resources solely for purposes of the Consent Decree as described in Paragraph 8 of the Consent Decree. Such applications shall be consistent with the CWA, Pennsylvania Clean Streams Law, Pennsylvania Dam Safety and Encroachments Act, and the rules and regulations promulgated thereunder, and make all demonstrations required by 40 C.F.R. §§ 230.1-230.98, 25 Pa. Code § 105.18a, and 25 Pa. Code § 105.21(c). In review of the Defendant's demonstration pursuant to 25 Pa. Code §105.21(c)(2)(iv), economic hardships on the part of the Defendant will not be considered as extraordinary circumstances.

        3.     Upon review, if any Agency determines that the Defendant's application is incomplete or is technically inadequate or does not demonstrate the Defendant's eligibility for an after the fact authorization under the CWA, Pennsylvania Clean Streams Law, Pennsylvania Dam Safety and Encroachments Act, and the rules and regulations promulgated thereunder, the Agency, through PADEP, will notify Defendant. Defendant will have 60 days from such notification to submit materials to complete the application or revise the current application to address the identified deficiencies. If the Agencies determine that the Defendant's submission does not resolve the identified deficiencies, the Agencies will either provide an additional opportunity for Defendant to resolve the identified deficiencies, approve Defendant's application with conditions, or deny Defendant's application.

        a.     Any challenges to a PADEP action, as that term is defined in the regulations of the EHB, must be filed with the EHB.

        b.     After Defendant's opportunity to submit materials to complete the application or revise the current application, if the Corps determines that Defendant's application is incomplete, the Corps may notify Defendant and the other Agencies that the Corps considers the application withdrawn pursuant to 33 C.F.R. § 325.2(d)(5). If the Corps determines that Defendant's application is for an activity that does not qualify for authorization under a Corps general permit, the Corps will notify the Defendant and the other agencies that a standard permit is required. Any challenges to a denial or proffered permit from the Corps must be filed with the U.S. Army Corps of Engineers, North Atlantic Division (NAD) within 60 days of the appealable decision. Any disagreements regarding other Corps decisions, such as a decision to consider an application withdrawn, shall be addressed through Dispute Resolution pursuant to Section XI of the Consent Decree.

        c.     Within 60 days from the denial or withdrawal, or, if a timely appeal is filed with the EHB or NAD, within 60 days from a final adjudication affirming the denial (or, if Defendant disputes the Corps' decision pursuant to the Dispute Resolution procedures of the Consent Decree, within 60 days from the conclusion of the Dispute Resolution procedures affirming the Corps' decision), Defendant shall either submit a new Joint Permit Application or other appropriate permit application in accordance with Return to Compliance

**Execution Copy**

Option 2 in Section II.B of this Appendix B, or submit an SSRP for the A-2 Impact Polygons at the Site subject to the denial in accordance with the terms and conditions of Return to Compliance Option 1 or Option 3 in Section II.A or II.C of this Appendix B.  Defendant's failure to submit a new application or an SSRP within the timeframe identified in this paragraph shall be considered a violation of the Consent Decree, and the Defendant shall be subject to any remedies and/or penalties set forth in the Consent Decree.

4.      Defendant shall provide mitigation for unavoidable impacts consistent with Section III of this Appendix B.

**C.      Return to Compliance Option 3 – Combination After the Fact Authorization and Partial Restoration**

1.      Sites that contain both A-1 and A-2 Impact Polygons shall be referred to as "Option 3" Sites.

2.      For those A-1 Impact Polygons within each Option 3 Site where Defendant proposes to restore aquatic resources impacted by unauthorized activities, Defendant shall follow the process set forth in Section II.A.

3.      For those A-2 Impact Polygons within each Option 3 Site where Defendant proposes to seek authorization to leave dredged and/or fill material in place or unauthorized activities that are not restored, Defendant shall follow the process set forth in Section II.B.

**III.      Mitigation**

**A.      Mitigation required by this Appendix B shall consist of the following:**

1.      The Parties agree that mitigation necessary to return the Sites to compliance with the CWA and Pennsylvania law will be conducted by CALLC in accordance with 33 C.F.R. Part 332, 40 C.F.R. §§ 230.91-230.98, and 25 Pa. Code §§ 105.1, 105.13, 105.16, 105.18a(a)(3), 105.18a(b)(7), 105.20a, and 105.21(a-c) and the Replacement Criteria below.  The Federal Agencies require mitigation for temporal loss as part of return to compliance for the restored sites.  Mitigation required in association with a federal after-the-fact permit will be stated as a special condition of the applicable permit vehicle, i.e., Nationwide Permit 32, the Pennsylvania Statewide Programmatic General Permit (PASPGP), or a Standard Individual Permit.  The Federal Agencies generally require mitigation for losses of wetlands, streams, or other open waters that exceed 1/10 of an acre, but may determine, on a case-by-case basis, that mitigation is required for losses of 1/10 of an acre or less to ensure that the activity results in only minimal adverse environmental effects.  The permittee must develop a plan consistent with Pennsylvania law and 33 C.F.R. § 332.4(c), if required, for each mitigation project proposed by Defendant to offset impacts to A-1 and A-2 polygons.  In cases where PADEP requires mitigation, but the Federal Agencies do not, the mitigation plan need not comply with the requirements of 33 C.F.R. § 332.4(c), so long as it complies with Pennsylvania law.

2.      Defendant may satisfy mitigation obligations under the Consent Decree through any method consistent with 40 C.F.R. § 230.91-.98; 33 C.F.R. part 332 and 25 Pa. Code

38018973.1

**Execution Copy**

§105.20a, except as provided in this Appendix B.  In cases where PADEP requires mitigation, but the Federal Agencies do not, Pennsylvania's in-lieu fee program may be an available option, regardless of whether that program is approved by the Corps.

       3.      Based upon the Agencies' requirement for CALLC to seek permits pursuant to Paragraph 25 of the Consent Decree, and in light of the Replacement Criteria below and the wetland and stream classifications listed in Appendix A, CALLC estimates its mitigation obligation will be the equivalent of the establishment or re-establishment of 55 wetland acres, and 4,410 linear feet of stream restoration or enhancement.  The Parties agree that the actual mitigation obligation will be determined through the return to compliance process in this Appendix B on a Site-by-Site basis, and the Agencies are not bound by CALLC's estimate of its mitigation obligation.  The Parties agree that Defendant's obligation to provide mitigation arises from its future compliance with Appendix B as applied to the impacts disclosed in Appendix A. Defendant acknowledges that Pennsylvania law requires applicants seeking permits for the impacts from unauthorized activities to provide mitigation for unavoidable impacts to Commonwealth waters.  Defendant further acknowledges that Section 404 of the Clean Water Act and its implementing regulations require applicants seeking permits for the discharge of dredged or fill material to provide mitigation for unavoidable impacts to waters of the United States.  Nothing in this Consent Decree supersedes or nullifies requirements in Pennsylvania and federal law that require applicants for permits for impacts from unauthorized activities or the discharge of dredged or fill material to take all necessary and practicable steps to avoid and minimize impacts to waters of the Commonwealth and/or waters of the United States.  The Agencies further agree that Defendant may reduce its mitigation obligation arising from compliance with Appendix B by choosing to restore impacted aquatic resources in lieu of seeking an after-the-fact permit or, where an after-the-fact permit is sought, through avoidance and minimization of impacts as required under Pennsylvania and federal law.

       4.      The Parties agree that the following Replacement Criteria are consistent with State and federal regulations and, subject to Section III.A.3 of this Appendix B, will be used to determine the amount of mitigation necessary to return the Impact Polygons to compliance on a Site-by-Site basis in connection with implementation of the obligations under Appendix B. The amount of mitigation required to meet the requirements of 33 C.F.R. Part 332, 40 C.F.R. §§ 230.91-230.98, and 25 Pa. Code §105.1, 105.13, 105.16, 105.18a(a)(3), 105.18a(b)(7), 105.20a, and 105.21(a-c) has been determined utilizing Replacement Criteria as described below and through the procedures described in Section II of this Appendix B.

       5.      The Parties agree that federal and state regulations allow the Corps and PADEP to use ratios to determine the quantity of mitigation necessary to offset impacts to aquatic resources.  Such ratios account for the extent (area or length) of the impacted aquatic resources, the ecological functions and values performed by the impacted aquatic resources, and the temporal losses, which accounts for the time period during which the ecological functions and values performed by the impacted aquatic resources are unavailable due to the impact and to the time necessary to replace the resource.  The Parties agree that, subject to Section III.A.3 of this Appendix B, the mitigation necessary to return to compliance on a Site-by-Site basis in connection with implementation of Appendix B will be calculated using the ratios set forth below, which are expressed as the equivalent of establishment or re-establishment of wetlands and restoration or enhancement of streams.  Rehabilitation or enhancement of wetlands may be

38018973.1

**Execution Copy**

proposed as part of any mitigation proposal, but the amount of credit for any rehabilitation or enhancement will be determined by examining the functions and values provided by the proposed rehabilitation or enhancement.  A higher acreage of rehabilitation or enhancement may be required to provide the functional equivalent of establishment or re-establishment. The resulting quantity of mitigation necessary to offset permanent losses of wetland areas (A-2 Impact Polygons), calculated using the ratios set forth below will ensure a "no net loss" of jurisdictional wetland areas.

        a.      For permanent impacts to aquatic resources (A-2 Impact Polygons), the amount of mitigation needed to offset permanent losses shall be calculated using the following ratios:

        i.      Palustrine Forested Wetlands (PFO) shall be mitigated at a ratio of 7:1 based on impact area.

        ii.      Palustrine Scrub-Shrub Wetlands (PSS) shall be mitigated at a ratio of 5:1 based on impact area.

        iii.      Palustrine Emergent Wetlands (PEM) shall be mitigated at a ratio of 2:1 based on impact area.

        iv.      Impacts to streams from well pads and impoundments shall be mitigated at a ratio of 2:1 based on impact length.

        v.      Impacts to streams from access road crossings shall be mitigated in accordance with the following ratios:

        (a)      Perennial Streams shall be mitigated at a ratio of 2:1 based on impact length.

        (b)      Intermittent Streams shall be mitigated at a ratio of 1.5:1 based on impact length.

        b.      For aquatic resources that will be restored on-site (A-1 Impact Polygons), the mitigation needed to offset temporal losses shall be calculated using the following ratios:

        i.      Palustrine Forested Wetlands (PFO) shall be mitigated at a ratio of 2:1 based on impact area.

        ii.      Palustrine Scrub-Shrub Wetland (PSS) shall be mitigated at a ratio of 1:1 based on impact area.

        iii.      Palustrine Emergent Wetlands (PEM) shall be mitigated at a ratio of 0.5:1 based on impact area.

        iv.      Perennial Streams shall be mitigated at a ratio of 1.5:1 based on impact length.

7

**Execution Copy**

       v.          Intermittent Streams shall be mitigated at a ratio of 1:1 based on impact length.

> **B.**     **Monitoring for Restoration and Permittee Responsible Mitigation**

       1.      As part of each SSRP, the Defendant shall develop and implement a plan to monitor the success of restoration for each A-1 Impact Polygon identified pursuant to Sections II.A and II.C. of this Appendix B, and for any permittee-responsible mitigation site proposed as mitigation pursuant to Section III.A.

       2.      Each monitoring plan developed pursuant to Section III.B.1 shall provide for submission of monitoring reports beginning with the first full growing season following completion of the restoration or mitigation site. Each monitoring plan will specify that monitoring events shall occur for a minimum of five years, although, depending on the circumstances, longer monitoring periods may be required and shorter monitoring periods may be approved by the Agencies, with monitoring occurring twice per year during the growing season for the first two years and once annually thereafter.

       3.      Monitoring plans and reports shall comply with the requirements of U.S. Army Corps of Engineers Regulatory Guidance Letter 08-03 and PADEP Design Criteria - Wetlands Replacement/Monitoring Technical Guidance, 363-0300-001. The monitoring reports shall contain information describing how and whether restoration or mitigation is achieving the performance standards outlined in the monitoring plan and/or documenting the degree of success of the restoration or mitigation at the time of inspection, an inventory of the surviving plant species and percentage of areal coverage, and photographs of the restoration or mitigation site with plans showing the location and orientation of each of the photographs. To correct any deficiencies identified in the monitoring reports, the Defendant shall develop and implement a plan and schedule of actions necessary to achieve successful restoration or mitigation. In addition, Defendant shall implement any modifications to the plan and schedule as approved by the Agencies pursuant to Section V of this Appendix B.

       4.      Restoration and/or Permittee Responsible Mitigation will be considered successful when all performance standards as stated in the approved SSRP or mitigation plan have been met, and the Agencies have certified in writing that these objectives are fully established and are sustainable. The Agencies may authorize an abbreviated monitoring period when all performance standards are met, or may authorize a smaller set of criteria to monitor as certain objectives become fully established or are sustainable over time.

       5.      If the restored or constructed mitigation sites have not met performance standards by the end of the approved monitoring period, including any extensions, the Defendant shall provide additional mitigation in a manner consistent with Section III.A. of this Appendix B and the Consent Decree.

# IV.    **Earth Disturbance Activities Associated with Return to Compliance**

> **A.**     **Stabilization and Restoration After Earth Disturbance**

All earth disturbance activities associated with return to compliance as described in the

**Execution Copy**

Consent Decree and this Appendix B must: be undertaken in accordance with the requirements contained in 25 Pa. Code Chapter 102, ensure disturbed areas are stabilized and designed to avoid and minimize landslides or slips, utilize only non-invasive species approved by DEP for planting, be consistent with the Restoration Plan component of the SSRP, if applicable, and incorporate quantitative performance measures.  Defendant shall also undertake periodic monitoring at a frequency to be in compliance with Chapter 102 performance measures.  These performance measures require weekly monitoring as well as monitoring after any "stormwater run-off event."

### B.      Stormwater Management Best Management Practices

All earth disturbance activities undertaken under this Appendix B shall incorporate the post-construction stormwater management best management practices (BMPs) demonstrating compliance with 25 Pa. Code § 102.8, and, as applicable, 25 Pa. Code § 102.14.

### C.      Site Stabilization

The Defendant shall provide PADEP with notice of permanent site stabilization.

### D.      Erosion & Sedimentation (E&S) and Post Construction Stormwater Management (PCSM) Plans

After the fact authorizations and/or the SSRP shall include E&S and PCSM plans developed in accordance with 25 Pa. Code Chapter 102 and which satisfy Sections IV.A and IV.B and shall be submitted concurrently within the timeframes and the plans identified in Sections II.A, II.B and II.C.  When the Defendant does not have Erosion and Sediment Control General Permit (ESCGP) coverage for the earth disturbance activity covered under the SSRP, then the Defendant shall also apply for and receive authorization under the ESCGP prior to conducting any earth disturbance activities pursuant to the Consent Decree and this Appendix B. In addition to all other requirements for E&S and PCSM Plans in 25 Pa. Code Chapter 102, E&S and PCSM Plans must include identification of the location of any first receiving surface waters (which includes wetlands) of the Commonwealth and any second receiving surface waters (which include wetlands) of the Commonwealth within two (2) miles of the restored feature, which may receive runoff within or from the restored feature and their classification(s) under Chapter 93.

### E.      Permit Amendment or Renewal

Where Impact Polygons subject to this Appendix are located within Sites for which permit coverage previously has been obtained pursuant to 25 Pa. Code Chapter 102, the Defendant will update the 25 Pa. Code Chapter 102 permit coverage and associated plans to the extent required by law, and will take measures to ensure stormwater management BMPs are functioning in accordance with 25 Pa. Code Chapter 102.

## V.      Submission of Documents

Regarding any document that the Defendant is required to submit pursuant to this Appendix B, the Agencies will review each of the Defendant's documents and the appropriate

Execution Copy

Agency or Agencies, through PADEP, will approve, or disapprove the document, or a portion thereof, in writing.  Except as described more specifically in this Appendix B, if the document, or any portion of the document, is found to be deficient by the Agencies, within 60 days of notification of the deficiencies, the Defendant shall submit a revised document to PADEP that addresses the Agencies' concerns.  The appropriate Agency or Agencies will approve, suggest modifications to correct the deficiencies, or disapprove the revised document in writing.  Upon approval by the Agencies, the document, and any schedule contained therein, shall be incorporated and enforceable under this Consent Decree for all purposes and shall be implemented by the Defendant in accordance with the schedule approved by the appropriate Agency or Agencies.

## VI.    Communications

All correspondence from Defendant to the Agencies related to permit applications and SSRPs should be submitted to:

> Program Manager, Bureau of District Oil & Gas Operations
> Commonwealth of Pennsylvania Department of Environmental Protection
> 208 West Third Street, Suite 101
> Williamsport, PA 17701

All other correspondence related to this Appendix should be submitted to the Agency representatives identified in Section XIV of the Consent Decree.

## VII.    Extensions of the Timeframes Above

Defendant shall perform the actions required by this Appendix within the time limits set forth herein.  Defendant's submission of proposed schedules for obtaining the necessary authorizations and then implementing the restoration, mitigation and monitoring work required by the Consent Decree and this Appendix B shall clearly indicate Defendant's anticipated timing for the Agencies to process and approve all submissions required herein.  To the extent the Agencies do not process and approve Defendant's submissions in accordance with the timing anticipated by an approved schedule, extension requests shall not be unreasonably conditioned, delayed or denied.  The Agencies also recognize that delineation and restoration activities, as well as the submission of additional information requested by the Agencies for permit processing, may be delayed because of unanticipated seasonal and weather conditions, issues relating to landowner access, the need to gather additional information reasonably necessary to performance of the required action, and leases and other transfers or conveyances of possession of the Sites.  Extension requests based on these issues will not be unreasonably conditioned, delayed or denied.

38018973.1